## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| ROSE DAVENPORT *o/b/o D.H.*, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:20-00487-N |
| | ) | |
| KILOLO KIJAKAZI, *Acting* | ) | |
| *Commissioner of Social Security*, | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Rose Davenport, on behalf of D.H., a minor, brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying D.H.'s application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*[1] Upon due consideration of the parties' briefs (Docs. 16, 17, 18) and those portions of the certified transcript of the administrative record (Doc. 15) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** for further administrative proceedings.[2]

---

[1] "Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987) (citing 42 U.S.C. § 1382(a) (1982 ed., Supp. III)).

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 21, 22).

With the Court's consent, the parties jointly waived the opportunity to present oral argument. (*See* Docs. 20, 23).

## I.    *Procedural Background*

The subject SSI application was filed with the Social Security Administration ("SSA") on D.H.'s behalf on October 16, 2018. After it was initially denied, D.H. requested, and on November 22, 2019, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. On December 17, 2019, the ALJ issued an unfavorable decision on D.H.'s application, finding D.H. not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 15, PageID.82-94).

The Commissioner's decision on D.H.'s application became final when the Appeals Council for the Office of Disability Adjudication and Review denied D.H.'s request for review of the ALJ's unfavorable decision on September 10, 2020. (*Id.*, PageID.70-75). Davenport, on behalf of D.H., subsequently brought this action under § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262

(11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v.*

*Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). *See also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("A preponderance of the evidence is not required. In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." (citation omitted)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

---

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter*,

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[4]

---

808 F.3d at 822 ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam) (unpublished) ("The question is not, as Werner suggests, whether ALJ could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it." (footnote omitted)); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

[4] However, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social

---

Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); Turner v. Social Security Administration, Commissioner, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing] it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

---

establish that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited.").

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Eligibility for SSI requires a showing that the claimant is "aged, blind, or disabled." *See* 42 U.S.C. § 1382(a)(1)-(2). "An individual under the age of 18 shall be considered disabled … if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). "Notwithstanding [§ 1382c(a)(3)(C)](i), no individual under the age of 18 who engages in substantial gainful activity … may be considered to be disabled." *Id.* § 1382c(a)(3)(C)(ii).

> The Social Security Administration uses a sequential, three-step analysis to determine whether a child is disabled. The claimant must establish (1) whether the child is working; (2) whether the child has a severe impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of an impairment in the Listing of Impairments. 20 C.F.R. § 416.924(a); *id.* Pt. 404, Subpt. P, App. 1…

> …To determine whether an impairment or combination of impairments "functionally equals" a listed impairment, the administrative law judge assesses the claimant on six domains, including (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. *Id.* §§ 416.926a(a), (b)(1), (d). The claimant must establish that he suffers from an "extreme" limitation in one of the domains, or "marked" limitations in two of the domains. *Id.* § 416.926a(a).

*Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850-51 (11th Cir. 2015).[6]

"The burden lies with the claimant to prove that he meets or equals a Listing." *Gray ex rel. Whymss v. Comm'r of Soc. Sec.*, 454 F. App'x 748, 750 (11th Cir. 2011) (per curiam) (unpublished) (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)). However, "the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v.*

---

[6] The Court will hereinafter use "Step One," "Step Two," and "Step Three" when referencing individual steps of this sequential evaluation.

*Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.    *Summary of the ALJ's Decision*

At Step One, the ALJ determined that D.H. was a "school-age child" on both the application filing date of October 16, 2018, and the date of the ALJ's decision,[7] and that D.H. had not engaged in substantial gainful activity since the application

---

[7] *See* 20 C.F.R. § 416.926a(g)(2)(iv) (defining "school-age children" as those from "age 6 to attainment of age 12").

filing date. (Doc. 15, PageID.86).[8]  At Step Two, the ALJ determined that D.H. had the following severe impairments: attention deficit hyperactivity disorder (ADHD), oppositional defiant disorder, and asthma. (Doc. 15, PageID.86). At Step Three, the ALJ found that D.H. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc. 15, PageID.86-90).  In determining that D.H. did not functionally equal a Listing, the ALJ found that D.H. had no limitation in the domain of moving about and manipulating objects, and "less than marked" limitation in each of the other 5 domains (*see id.*, PageID.87) – thus failing to satisfy the requirement that a child applicant demonstrate either an "extreme" limitation in one of the domains or "marked" limitations in two.  Accordingly, the ALJ found that D.H. was not under a disability as defined by the Social Security Act since the filing date of the subject application. (*Id.*, PageID.90).

## IV.  *Analysis*

### a.  Dr. Heilpern's Prior Administrative Medical Findings

Davenport first argues the ALJ reversibly erred in finding the prior administrative medical findings of medical consultant Robert Heilpern, M.D., to be persuasive because Dr. Heilpern "is simply a non-examining, reviewing physician,

---

[8] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citing 20 C.F.R. § 416.202–03 (2005)).

whose opinion is not supported by substantial evidence." (Doc. 17, PageID.1043).

One category of evidence the Commissioner considers during the disability adjudication process are "prior administrative medical findings." *See* 20 C.F.R. §§ 416.913(a)(5), 416.913a(b)-(c). "A prior administrative medical finding is a finding, other than the ultimate determination about whether [the claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review … in [the] claim based on their review of the evidence in [the] case record, such as: (i) The existence and severity of [the claimant's] impairment(s); (ii) The existence and severity of y[the claimant's] symptoms; [and] (iii) Statements about whether [the claimant's] impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1…" *Id.* § 416.913(a)(5)(1)-(iii). Under the Social Security regulations applicable to D.H.'s application,[9] the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any … prior administrative medical findings." 20 C.F.R. § 416.920c(a). "When a medical source provides one or more … prior administrative medical findings, [the Commissioner] will consider those … prior administrative medical findings from that medical source together using [the

---

[9] On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers certain medical evidence, including medical opinions and prior administrative findings from federal and state agency medical consultants. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). The rules for evaluating medical opinions and prior administrative medical findings found in 20 C.F.R. § 416.920c apply to SSI claims filed on or after March 27, 2017, such as D.H.'s. *Compare* 20 C.F.R. § 416.920c (applicable to claims filed on or after on or after March 27, 2017) *with* 20 C.F.R. § 416.927 (applicable to claims filed before March 27, 2017).

following] factors …, as appropriate[,]" *id.*: supportability, consistency, relationship with the claimant, specialization, and "other factors." *Id.* § 416.920c(c).

"The most important factors … are supportability … and consistency…" Id. § 416.920c(a). *Accord id.* § 416.920c(b)(2). "Supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(1). "Consistency" means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2). The Commissioner "will explain how [the Commissioner] considered the supportability and consistency factors for a medical source's … prior administrative medical findings in [the Commissioner's] determination or decision." *Id.* § 416.920c(b)(2). On the other hand, the Commissioner "may, but [is] not required to, explain how [the Commissioner] considered the [other] factors … when … articulat[ing] how [the Commissioner] consider[ed] … prior administrative medical findings in [the] case record[,]" *id.* unless the Commissioner "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported … and consistent with the record … but are not exactly the same…" *Id.* § 416.920c(b)(3). Thus, Davenport is wrong to suggest that the ALJ could not rely on Dr. Heilpern's findings simply because he did not examine D.H., as

this consideration is of secondary importance to whether Dr. Heilpern's findings are well-supported and consistent with the record.

The ALJ considered Dr. Heilpern's prior administrative medical findings as follows:

> …Robert Heilpern, M.D., a Disability Determination Service physician, reviewed the record [as of January 23, 2019]. Based on his review, Dr. Heilpern opined the claimant had no limitation in moving about and manipulating objects and less than marked limitations in all other domains (Ex. B1A). The undersigned finds this opinion is consistent with psychiatric records and with education records. Therefore, the undersigned finds this opinion is persuasive.

(Doc. 15, PageID.89).

Davenport argues that Dr. Heilpern's findings are not supported by substantial evidence because Dr. Heilpern "did not review any evidence submitted after January 14, 2019[,] mean[ing he] did not review records from West Alabama Mental Health Center beginning December 15, 2018, any records from Fitz-Gerald Clinic, the school records dated February 29, 2019, and November 18, 2019, or the teacher questionnaire dated April 20, 2019." (Doc. 17, PageID.1043). However, given how the disability adjudicative process proceeds, there will always be some delay between the date a prior administrative medical finding is made and the issuance of an ALJ's decision on a claim, meaning there is always the possibility—indeed, the likelihood—that a claimant will submit additional evidence to the ALJ postdating the prior administrative findings. Nothing in the regulations indicates that an ALJ must disregard a prior administrative medical finding simply because additional evidence was submitted after that finding was made. Quite the opposite, in fact. *See* 20 C.F.R.

§ 416.913a(b)(1) ("Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation.").

Moreover, the ALJ will evaluate a prior administrative medical finding's "supportability" and "consistency" based on all the record evidence before the ALJ, including that postdating the finding.[10] And contrary to what Davenport appears to suggest, this Court does not review a prior administrative medical finding to determine whether the finding itself is supported by substantial evidence. Rather, the Court looks to whether the Commissioner's decision assigning a prior finding persuasive value is supported by substantial evidence.[11]

Nevertheless, as will be explained, the undersigned concludes that the ALJ

---

[10] Additionally, many of the records Davenport asserts Dr. Heilpern did not consider were also not considered by the ALJ because they were not made part of the record at the time the ALJ issued her decision. Thus, they are not relevant to determining whether the ALJ's decision to credit Dr. Heilpern's finding was proper. *See Falge*, 150 F.3d at 1323 ("[W]hen the [Appeals Council] has denied review, [the Court] *will look only to the evidence actually presented to the ALJ* in determining whether the ALJ's decision is supported by substantial evidence." (emphasis added)).

[11] Davenport also complains that Dr. Heilpern's discussion of a child Functional Report completed on behalf of D.H. omitted mention of certain claimed limitations. However, Davenport cites no authority indicating that Dr. Heilpern was required to specifically mention every piece of evidence before him when rendering his findings. *Cf. Mitchell*, 771 F.3d at 782 ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision…" (quotation omitted)). Regardless, as was previously mentioned, the ALJ had an independent duty to compare Dr. Heilpern's findings with the rest of the record, which included the same Functional Report, and Davenport makes no argument the ALJ failed to do so.

reversibly erred in failing to sufficiently explain how she conducted the functional equivalence analysis, thus preventing this Court from being able to determine whether her findings are rational and supported by substantial evidence. Because the ALJ effectively adopted Dr. Heilpern's findings on this issue, with only a conclusory statement that the findings were "consistent with psychiatric records and with education records" as justification, the Court is also unable to determine whether the ALJ's decision to assign great persuasive value to those findings was proper. Accordingly, the ALJ's decision to find Dr. Heilpern's prior administrative medical findings persuasive also cannot stand.

### b.   Functional Equivalence Domains

Davenport next argues that the ALJ's finding that D.H. had "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, is not supported by substantial evidence. However, the undersigned is unable to address this argument because the ALJ failed to explain her functional equivalency determinations with sufficient clarity. For that reason, reversal is warranted.

Social Security Ruling (SSR) 09-1p (Feb. 17, 2009), which "provides policy interpretations and consolidates information … for determining whether a child's impairment(s) functionally equals the listings[,]" explains  as follows:

> Our rules provide that we start our evaluation of functional equivalence by considering the child's functioning without considering the domains or individual impairments. They provide that "[w]hen we evaluate your functioning and decide which domains may be affected by your impairment(s), we will look first at your activities and limitations and

restrictions." 20 CFR 416.926a(c) (emphasis added). Our rules also provide that we:

> look at the information we have in your case record about how your functioning is affected during all of your activities when we decide whether your impairment or combination of impairments functionally equals the listings. Your activities are everything you do at home, at school, and in your community.

20 CFR 416.926a(b) (emphasis added).

After we identify which of a child's activities are limited, we determine which domains are involved in those activities. We then determine whether the child's impairment(s) could affect those domains and account for the limitations. This is because:

> [a]ny given activity may involve the integrated use of many abilities and skills; therefore, any single limitation may be the result of the interactive and cumulative effects of one or more impairments. And any given impairment may have effects in more than one domain; therefore, we will evaluate the limitations from your impairment(s) in any affected domain(s).

20 CFR 416.926a(c). We then rate the severity of the limitations in each affected domain.

This technique for determining functional equivalence accounts for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments—because it starts with a consideration of actual functioning in all settings. We have long called this technique our "whole child" approach.

2009 WL 396031, at *1-2 (footnote omitted).[12]

---

[12] Social Security Rulings are agency rulings published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). Federal courts hearing appeals of the Commissioner's administrative decisions are not bound by SSRs, but they are accorded "great respect and deference where the statute is not clear and the legislative history offers no guidance." *B. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. Apr. 1981). Moreover, courts "require the

Here, the ALJ did not sufficiently "identify which of [D.H.]'s activities are limited" and "which domains are involved in those activities." Instead, the ALJ simply listed, in conclusory bullet-point format, the six functional equivalence domains and the degree of limitation assigned to each, then engaged in a generalized discussion of the record evidence without offering an individualized assessment of how it justified the degree of limitation in each of the domains. (*See* Doc. 15, PageID.87-90). This manner of analysis has the effect of collapsing the six distinct domains into one amorphous "super-domain" under which the assessment of functional equivalency boils down to how the child is doing in general. The very fact that the Social Security regulations provide for six individual domains, each with its own detailed set of criteria and considerations, *see generally* 20 C.F.R. § 416.926a(g)-(1), suggests that a more granular analysis is required than what the ALJ provided here.

Moreover, when Davenport argues that substantial evidence does not support the ALJ's findings of "less than marked" limitations in certain domains, the Court is forced to guess at what evidence the ALJ actually did rely on in making those findings. The Court will not, and indeed cannot, do this. "[W]hen the ALJ fails to state with at least some measure of clarity the grounds for his decision, we will decline to affirm simply because some rationale might have supported the ALJ's conclusion. In such a situation, to say that the ALJ's decision is supported by substantial evidence

---

agency to follow its regulations where failure to enforce such regulations would adversely affect substantive rights of individuals. This is the case even where … the internal procedures are more rigorous than otherwise would be required." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1361 (11th Cir. 2018) (citations and quotations omitted).

approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Winschel*, 631 F.3d at 1179 (citation and quotations omitted). "[T]o affirm simply because some rationale might have supported the ALJ's conclusion ... would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516.

The undersigned acknowledges that the ALJ's functional equivalence assessment is supported by—indeed, mirrors—Dr. Heilpern's prior administrative medical findings. However, once an application is with the ALJ, the ALJ is ultimately responsible for assessing functional equivalency. *See* 20 C.F.R. § 416.926a(n) ("In cases where the State agency or other designee of the Commissioner makes the initial or reconsideration disability determination, a State agency medical or psychological consultant or other designee of the Commissioner ... has the overall responsibility for determining functional equivalence ... For cases at the administrative law judge or Appeals Council level, the responsibility for deciding functional equivalence rests with the administrative law judge or Appeals Council."). The undersigned cannot determine whether the ALJ's decision to adopt Dr. Heilpern's prior findings is both rational and supported by substantial evidence if the ALJ fails to adequately show how she herself determined functional equivalency based on the record as a whole, including evidence that Dr. Heilpern did not consider. *See Winschel*, 631 F.3d at 1179 ("It is possible that the ALJ considered and rejected these two medical opinions, but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by substantial

evidence."); *Owens*, 748 F.2d at 1516 ("Our holding that the ALJ must pass on the credibility of the claimant is not new, nor is our requirement that he state with at least some measure of clarity the grounds for his decision. We must continue to insist on these requirements so that we can perform the function entrusted to us in the administrative scheme … our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts. Because the ALJ did not provide us with the information essential to such an evaluation, we reverse with instructions to the district court to remand for further findings at the administrative hearing level.").

### c.    Remedy

As relief, Davenport requests "that the decision of the Commissioner be reversed for payment of benefits[,]" with "remand[] for further development" only an alternative request. (Doc. 17, PageID.1052). The Eleventh Circuit has recognized that reversal with remand to the Commissioner for further proceedings is generally warranted where, as here, "the ALJ has failed to apply the correct legal standards." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). While this Court may enter an order "awarding disability benefits where the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt[,]" *id.,* Davenport has failed to convince the undersigned that either of those requirements is met here.[13] Since the reversible

---

[13] *Compare Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991) ("The credibility of witnesses is for the Secretary to determine, not the courts … The decision of the Secretary here, however, rests not so much on the credibility of the 'history of pain;

error determined is based on the ALJ's failure to adequately explain how she considered the essential evidence, and since the Appeals Council denied review of the ALJ's decision, the undersigned cannot be sure that the Commissioner has "already considered the essential evidence." Moreover, even considering the evidence Davenport has cited as supportive of D.H.'s claim, she has failed to conclusively show that, on remand, the ALJ cannot possibly articulate adequate grounds supported by substantial evidence for finding that D.H. does not functionally equal a listing.

Moreover, the United States Supreme Court has cautioned that a court reviewing an agency decision "is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such

---

presented by Carnes, as on the adoption of a legal standard improper under Listing 10.10(A). []The record in this case is fully developed and there is no need to remand for additional evidence. Based on the facts adduced below and after application of the proper legal standard, we hold that claimant met the requirements of Listing 10.10(A) as early as 1982."), *with Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (per curiam) ("Though we have found that the ALJ erred in his application of the legal standards, at this time we decline to enter an order requiring entitlement to disability benefits. While it is true that the opinions of Drs. Todd and Raybin provide strong evidence of disability, it is at least arguable that the report of Dr. Morse is to the contrary. Consequently, it is appropriate that the evidence be evaluated in the first instance by the ALJ pursuant to the correct legal standards."), *and Hildebrand v. Comm'r of Soc. Sec.*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854238, at *7 (M.D. Fla. May 4, 2012) ("The errors noted here compel a return of the case to the Commissioner to evaluate the evidence and make findings in the first instance. For the reasons set forth above, the Court finds that certain of the conclusions of the ALJ were not made in accordance with proper legal standards and are not supported by substantial evidence. The Court does not find that only one conclusion can be drawn from the evidence; but that the conclusion that was drawn did not meet the standard of review. Under such a circumstance, it would not be appropriate for this Court to substitute its opinion of the weight to be given the evidence for that of the Commissioner. While the Court has the power to do just that in an appropriate case, the Court finds this is not such a case."), *report and recommendation adopted*, No. 6:11-CV-1012-ORL-31, 2012 WL 1854249 (M.D. Fla. May 21, 2012).

an inquiry. Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *INS v. Orlando Ventura*, 537 U.S. 12, 16, 123 S. Ct. 353, 154 L. Ed. 2d 272 (2002). *See also McDaniel v. Bowen*, 800 F.2d 1026, 1032 (11th Cir. 1986) ("[I]t would be an affront to the administrative process if courts were to engage in direct fact finding in these Social Security disability cases. The Congressional scheme is that, governed by standards promulgated by Congress and interpreted by the courts, the administrator is to find the facts case by case and make the determination of presence or absence of disability, and that, in the course of judicial review, the courts are then to respect the administrative determination."). The undersigned finds no reason to believe this case is one of the "rare circumstances" where remand to the agency is not the proper remedy.[14]

Accordingly, the Commissioner's final decision denying D.H.'s application for

---

[14] Davenport argues that the Court should reverse and order an award of benefits because D.H. has suffered an "injustice" like that in *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982), where the court found the claimant had "suffered an injustice" and rendered judgment in her favor "[d]ue to the perfunctory manner of the hearing, the quality and quantity of errors pointed out, and the lack of substantial evidence to support the ALJ's decision…" 672 F.2d at 840. Having considered *Walden*, the undersigned finds that this case is not sufficiently analogous to justify such relief. *See Truesdell v. Comm'r of Soc. Sec.*, No. 20-13416, 2022 WL 401548, at *7 (11th Cir. Feb. 10, 2022) (per curiam) (unpublished) ("We cannot reverse and remand to award Truesdell benefits because, unlike in *Davis* and *Walden*, Truesdell did not establish 'disability without any doubt' and the administrative law judge was not 'in error in several critical respects.' *See Davis*, 985 F.2d at 534; *Walden*, 672 F.2d at 837. Truesdell's hearing wasn't 'perfunctory,' and the administrative law judge didn't apply an improper legal standard or totally disregard unrefuted evidence. *See Walden*, 672 F.2d at 837, 840. Nor did the administrative law judge fail to address Truesdell's subjective assessment, to make findings of credibility, or to develop a full and fair record. *See id.*").

benefits is due to be **REVERSED**, and this cause **REMANDED** to the Commissioner under sentence four of § 405(g) for further administrative proceedings.[15]

## V.   *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying D.H.'s October 16, 2018 SSI application is **REVERSED**, and this cause **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision. This remand under sentence four of § 405(g) makes Davenport a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292, 113 S. Ct. 2625, 125 L. Ed. 2d 239 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), the Court hereby grants Davenport's counsel an extension of time in which to file a motion for fees under 42 U.S.C. § 406(b) until 30 days after the date of receipt of a notice of award of benefits from the SSA, should D.H. be awarded benefits on the subject application following

---

[15] Davenport has argued the ALJ also reversibly erred by failing to acknowledge certain evidence submitted shortly before the ALJ hearing, and after the ALJ hearing but before the ALJ issued her decision. She further argues that the Appeals Council reversibly erred by failing to find new evidence submitted to it to be material in denying D.H.'s request for review. Since D.H. will likely be given another opportunity to submit this evidence on remand, the undersigned declines to address these issues. *Cf. Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1066 n.4 (11th Cir. 2021) ("Pupo's remaining issues on appeal challenge the ALJ's decision to not give controlling weight to her doctors' opinions and finding that her mental impairments did not meet a listed impairment. Because we remand on two of her other issues, we offer no opinion as to whether the ALJ erred in these regards. On remand from the district court, the ALJ is to reconsider Pupo's claim based on the entire record.").

this remand.[16] Consistent with 20 C.F.R. § 422.210(c), "the date of receipt of notice …
shall be presumed to be 5 days after the date of such notice, unless there is a
reasonable showing to the contrary." If multiple award notices are issued, the time
for filing a § 406(b) fee motion shall run from the date of receipt of the latest-dated
notice.

Final judgment shall issue separately hereafter in accordance with this order
and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 29th day of March 2022.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[16] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam)
("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*,
261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v.
Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice
for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the
procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request
and the district court to include in the remand judgment a statement that attorneys
fees may be applied for within a specified time after the determination of the
plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").